MANION, Circuit Judge,
concurring.
The bankruptcy judge, after observing that debtor Susan Krieger had engaged in what he described as an extraordinarily persistent job search for over a decade, concluded that “[njever has the Court seen such utter futility be the result of a debt- or’s job search efforts. [She] is truly destitute and has been in these straits for many years without any respite.” In a well-reasoned opinion, the district court disagreed. Although I prefer the district court’s analysis, I recognize that our standard of review requires that in order to reverse we must determine that the bankruptcy judge’s key findings of fact were clearly erroneous. I accept this court’s conclusion that with a mixed determination of law and fact, we still must follow the clearly erroneous approach. Therefore I concur with the court’s order.
As it is presented, this case is truly an exception. But Ms. Krieger is fifty-three years old and is in good health. She resides with her seventy-five-year-old mother on a small rural farm. She has given up looking for a job, a search which she concludes is an effort in futility. Under normal circumstances that should not happen. She is healthy and well-educated. In 1999, Krieger received an Associate of Arts degree in Business Accounting from St. Charles Community College. In 2000, she enrolled at Webster University in Webster Groves, Missouri, where she earned a paralegal certificate and graduated with a Bachelor of Arts in Legal Studies. She had a high GPA and she received significant recognition for her academic achievements. She clearly received the education that she borrowed for. Yet as a result of years of non-payment, her remaining $17,000 student-loan debt has grown to approximately $25,000 with interest.[1]
The bankruptcy court was impressed by her diligent efforts to obtain a job. As the court notes, she applied for about 200 jobs over a ten-year period. Over a ten-year period that averages out to less than two applications per month, but presumably *886 she funneled all of those applications into an earlier part of the decade before she dropped out of the work force and moved in with her mother.
Unfortunately, she is not in a class by herself. Recently the Chicago Tribune cited an Equifax National Consumer Credit Trends Report finding that “banks wrote off $3 billion of student loan debt in the first two months of 2013, up more than 36% from the year-ago period.” Elvina Nawaguna, Student loan unite-offs hit $3 billion in first two months of year, Chi. Trib., Mar. 25, 2013.[2] One would hope that these defaults were for better reasons than those presented by Ms. Krieger. But although applicants for federal student aid generally must demonstrate “financial need,” applicants need not show that they will be capable of repaying the student-loan debts they incur. See Federal Student Aid, Basic Eligibility Criteria.[3] Moreover, outstanding student loan debt in the United States is approaching $1 trillion. See FRBNY Research and Statistics Group, Quarterly Report on Household Debt and Credit 1 (Feb. 2013). It is obvious that a crisis is at hand. Ms. Krieger’s successful petition for a discharge of her $25,000 obligation should be labeled as an extreme exception and an outlier. But with many people struggling to make payments on their loans, will they see in this case and perhaps others like it an excuse to avoid their own student-loan obligations?
A good and expensive education is no longer a guarantee that a good job will ensue. The Wall Street Journal recently featured an article headlined, “College Grads May Be Stuck in Low-Skill Jobs.” Ben Casselman, Wall St. J., Mar. 26, 2013, at A5. While college tuition continues to rise, job opportunities appear to be contracting. Hope remains that an eventually improving economy will generate more job opportunities. But for those who perceive that their employment-seeking efforts are at a dead end, bankruptcy should not be the answer. Rather than challenging the non-dischargeability barrier in bankruptcy, those who have concluded that there is no way they can pay off the debt should be required to enroll in the William D. Ford Income-Based Repayment Plan. Under that plan, a borrower’s monthly payment is limited to 15% of discretionary income (defined as any income above 150% of the poverty line). In Ms. Krieger’s case, she would have owed zero dollars unless she received an annual income of something approaching $17,000. And after twenty-five years under the IBR program, any remaining debt is forgiven.[4] This may sound like an unattractive alternative, but as the district court noted, this is certainly better than erasing what should be an undischargeable debt given Ms. Krieger’s age, good health, and solid education.

. The five separate student loans she originally received totaled $25,416 in principal, but with proceeds of a divorce settlement and other minor sources of income, she repaid several thousand dollars.

. http://articles.chicagotribune.com/2013-03-25/business/sns-rt-us-usa-studentloans-delinquencybre92ollk-20130325_l_student-loan-loan-write-offs-offer-more-flexible-repayment (last visited on Apr. 5, 2013)

. http://www.studentaid.ed.gov/eligibility/ basic-criteria (last visited on Apr. 5, 2013)

. Although the court treats this repayment program as only addressing Ms. Krieger's future ability to repay her student loans, the program was available to her well before she filed her bankruptcy petition. Ms. Krieger’s failure to inquire about and take advantage of this program before filing for bankruptcy is “evidence of a less than good faith effort to repay [her] student loan debts.” Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 782 (8th Cir.2009).